Next case is Pat Huval at ALM and I see counsel rolling in. versus the ITC 2012-1250. Do we have a telecounsel? Telecounsel, Mr. Shelley We're ready when you are, Mr. Shelley We're ready when you are, Mr. Shelley We're ready when you are, Mr. Shelley We're ready when you are, Mr. Shelley We think the due process argument is one that the court should consider carefully because of the actual situation of the way these statutes have applied to companies like SKF USA in which they are the largest, or at that point in time, I assume still, the largest United States producer of ball bearings and yet did not qualify because of a box that they checked on an ITC questionnaire 20 years before the verdict was even enacted into law. At that time, that action triggered a situation some 20 years later in which they and other similarly situated companies were excluded from participating in the distribution of duties as other domestic producers who did check the box properly 20 years earlier did do so. We think that the situation that is denial of their due process rights, this is not a continuation or re-argument of the free speech situation, it's a situation in which there should be no rational basis for that situation taking place the way the burden of it was written. It should not have resulted in any, because of the way this court determined the SKF USA initial cases and what the purpose of the burden of it was, which is to encourage and in fact incentivize petitioners or in this law or other laws to take actions and reward them for the actions they've taken, that to us is a prospective situation which started when the third amendment was enacted. What happened in triggering people who are rewarded for taking such actions under the anti-dumping law 20 years prior to that, not knowing that their actions would preclude them from any consideration is a violation of their due process rights. Let me see if I understand. You're pegging, I gather, your retroactivity argument, the impermissible retroactivity argument, on the fact that you are competitors with the people that received the payout. Is that correct? In other words, if you weren't competitors, you really wouldn't have standing to raise the retroactivity point, right? We are, and we are competitors in the industry that has been valid. That's what competitors mean. Because the harm is going to us as a competitor from not participating in the distribution. All right, but if you weren't competitors, you really wouldn't be able to raise the retroactivity point. We wouldn't be able to, and we wouldn't have standing to. If we had not participated in the anti-dumping review, we wouldn't. That's fine. Okay, I mean, unlike, for example, conceivably an equal protection argument in which you wouldn't have to be competitors. Correct. My next question is, in your reply brief, you rely on Zobel against Williams, and you rely on it for a broad proposition as you characterize it, and I want to test how broad that proposition is in your view. I think you say that the court in Zobel had that rewarding citizens for past actions is not a legitimate state purpose. Now, do you assert that that's always the case, that rewarding citizens for past actions is not a legitimate state purpose? That's what you said, and I just want to see if you really stand by that. Well, we stand by it in that situation because of the – In that situation being the situation in Zobel? Zobel, yeah, which we analogize to it. Let me give you an example. You wouldn't say that if Congress decided that the veterans who had fought in the Iraq war should get some kind of benefits, that that would be an impermissible state purpose, to award them benefits, even though it would be expressly for past action. I think it would depend on what the context of what the statute was reporting. Really? How about the GI Bill of Rights? They'll give you a specific statute. After World War II, Congress decided people who had fought in the war, thank you very much. Your reward is you are going to get educational benefits. No constitutional problem, you would think. No constitutional problem. Okay, how about this situation? How about if a veteran – Congress says veterans will get competitive advantage in federal employment so that they get ten points extra on their civil service exams over you and me, and you and I are competing with those veterans for a job, but the veteran's getting an extra ten points and the veteran gets the job. Do we have a retroactivity argument of the sort that you're making here? I think it depends on what the purpose of the statute is. The purpose is to reward those veterans for having served in Iraq. Is that okay? I don't think there's any problem rewarding them from serving in Iraq. The problem would be, and what we're saying here, and I believe what Zobel says is that the purpose of the law was to do something subsequent. We are doing something subsequent. We're giving them benefits in employment for something that they did long ago and that you and I are denied the equal benefit. And we could say, as your clients say here, we didn't know that you were going to end up making it more difficult for us to get federal employment simply because we didn't join the Iraq war. I'm having a hard time seeing why it's a different case. Well, I think it's slightly different. Here you have a statute that applies across the board to all anti-dumping investigations or cases regardless of the particular product involved. In your situation, I think you're talking about a specific subset of a group of people who were participating as veterans in a war, but it's not necessarily applicable to all situations in which there might be discrimination. If their participation allowed discrimination against other people later in a broader context, I think that's what we're trying to get you. Anti-dumping law applies to everyone, to all businesses who have exported or imported to the United States. And when you are providing an incentive to a recognized part of the industry, the domestic industry, which has to have been, in fact was considered in the ITC injury investigation and whether you would then impose anti-dumping duties, when you take a subset of that imperative group of companies to make the initial decision and then you take out a segment of it based on what that segment did earlier and benefit that segment so drastically, as was done in the bearing industry, that that is a retroactive application of the law. It should not place it. I don't know how to do it, but I don't think your situation is the same as this situation, because here we're starting with the big, all parties involved in the industry to which a decision has to be made to grant them, not grant them relief. And then when you decide to grant that group relief, you then take out a segment from it because of what that segment did and benefit them greater than the bigger group. If we don't agree with your continuing claim theory, are your claims time barred? No. The continuing claims theory is one of the mechanisms in which we believe because every year the affected domestic parties have to submit certifications in order to qualify for distribution of dumping duties. It's a regulatory process. Customs publishes the notice. It gives parties 60 days to file their certification and go forward. In this situation, the government is relying on dicta in the SKF USA case about when the two-year statute of period actually begins to run. In addition to the continuing claims theory, we believe that that was not a decision of this court in when it becomes. It focused on the publication of the Federal Register notice giving parties the 60 days in which to file their certifications. At the time of that publication, there was no guarantee or even any knowledge whether parties would be subject to or be able to receive distributions in that fiscal year period. That only is known after the certifications come in and the actual distributions of funds are actually made. Let me see if I... Oh, go ahead. Under that scenario, we have a two-year period. Let me see if I understand the mechanics of that system by which the determination is made as to who's eligible. First, there is, I guess, by regulation, a list that's sent out, findings that give everybody 60 days or at least an announcement that gives everybody 60 days to say, I ought to be on the list of people getting a distribution, correct? There's a list and there's also the regulation list, the criteria which they must respond to to substantiate their eligibility. Okay, so at that point, everybody has a chance to respond and say, I belong on the list. Correct. Okay. And then later, at least 30 days before the distribution, I gather, there's a final list which says, these are the people that are going to get paid. Well, I don't know that it's actually a published final list. Like, SKF each year applied when the notice was published to be certified. At least a notice of intent. Yeah, we do qualify. These are the expenditures we have, all the necessary elements in the regulation. All right. And then we receive a rejection letter from the custom service saying, we're not on the list and we don't qualify. My question is, when do you receive that rejection letter in the course of all this? Sometime within the 60-day period prior to the distribution. Prior to the distribution. Or right at the end of it. It's usually closer to the end of it. There's no set time, but it's in that 60-day period. And your complaint, let's just take the easy one, which is the one that isn't more confusing because there were two complaints. But the one complaint case, the SKF case, your complaint was filed within two years of the rejection letter? No. Within two years of the date that payments actually go out to the parties who were determined to qualify. But not within two years of the rejection letter? No, no. Okay. So you had a final notice from the agency that you weren't going to get paid as of the time the rejection letter was sent. And what's the date of that rejection letter? Well, it has to be, I don't know the exact, it has to be by the end of the 60-day period. Well, no, it's usually the 60-day period typically ends like the end of September, I believe. And then distributions have to be made by the end of October or maybe it's a month later. I don't remember exactly, but it's towards the end of that period because it's done on a fiscal year basis, which is October 1st. And so each year this period is the government's fiscal year. But you did not file within two years of the rejection letter itself? We did not, but we would argue that that's not the criteria because the criteria is when everyone, we were not hurt by our being rejected at that time when we received the rejection letter. We were hurt when our competitors received their additional funds and that does not happen until the end of the fiscal year period. So the harm to us does not come from our not being accepted. The harm to us comes from our competitors receiving the funds. Mr. Shelley, you're into your rebuttal time, but we'll give you your requested three minutes back. Mr. Tomlinson, and you're going to take eight minutes. Thank you, Your Honor. Martin Tomlinson from the United States. I'd like to, if I could, just pick up quickly on that point on the timeliness issue. Mr. Shelley characterized our reliance on the SKF case as reliance upon DICTA in the SKF case. We strongly dispute that. The actual language of the SKF case on the timeliness issue was, quote, we hold that the filing of SKF's complaint was timely in any event because the cause of action did not accrue until June 1, 2005. And June 1, 2005 was the date upon which CBP published its list of who these ADPs are that would receive distributions. Well, clarify for me the difference between the publication of the list and the opportunity that those who were not on the list have to request inclusion in the final distribution and the notification, if I understood what Mr. Shelley was saying, a notification to those people who make such application that, indeed, they are not going to be included. Is that, in fact, the way you understand the way the scheme works? Your Honor, I'll give you my understanding. Mr. Gallagher from ITC will be up here momentarily. He can correct me if I'm wrong. My understanding is – It's pretty important, potentially. It is, Your Honor. ITC prepares the list. A producer submits something to ITC asking to be put on the list. ITC prepares the list, lets you know if you're not on the list, and then you have an opportunity to follow up with them. At that point, if ITC decides you're still not on the list, they forward that list to CBP. All potential ADPs and even some people who are not on the ITC list file certifications with CBP to be on the final published list of who will receive distributions. And then CBP publishes that list. Somebody gets a letter, like SKF would get a letter saying, thank you for your application. It is denied. Not from CBP. I'll let Mr. Gallagher speak. Who? I believe there's a letter from ITC. Okay. But CBP does not specifically notify you that you are not on the list, but you certify that you're supposed to be on the list, then the list is published. And if your name is not on that list, which, again, is published and available to you, you know that you are not on the final list of ADPs who will receive distributions. And when do you think the statute of limitations, when do you think the cause of action accrues? At the point at which the first list comes out? The point at which the CBP list comes out. And the point at which the last list comes out? That's correct. The final one after you have gotten your letter saying, sorry, you're not on our list. That's correct. And that was the holding of this court in SKF. And here that happened on June 2nd, 2004. Neither of the two complaints at issue for fiscal year 2004 were filed until September 2006, which is outside the two-year statute. Your Honors, I'd also like to... If I could just keep going on this. Do you think this two-year statute of limitations is jurisdictional? Yes, Your Honor. That's our understanding of it. Now this affects only either one or two of the multiple claims that are before us, correct? That's correct. So it would not dispose of the entire case in any event. But on the face of it, it doesn't... I mean, when we look at some of the recent Supreme Court cases like Henderson, which seem to be really telling all of us that these sorts of statute of limitations to be jurisdictional, there has to be a very clear, strong intent from Congress to make it so. And this one, I mean, it's part of the chapter entitled procedure, not the one governing jurisdiction. Is that right? I believe that is correct, Your Honor. So isn't that a trait that seems to lean against deeming this one jurisdictional? Potentially, Your Honor. But I do think it's important to note that plaintiffs' appellants have not raised any tolling or any equitable tolling or any arguments along those lines. Well, no, but the question for us is whether we can even reach the merits of this issue if it is jurisdictional. We presumably can't with respect at least to the particular claims that are at issue. That's correct, Your Honor. So you say that it – I mean, therefore, whether it's jurisdictional or not, in nature, it really does matter. That's correct. Put it another way, we can't – we couldn't – assuming we were prepared to affirm on the merits with respect at least to the issues that are covered by the statute of limitations questions, we couldn't say we don't need to address those because we can go directly to the merits. If it's not jurisdictional, that's correct. If it is jurisdictional, we couldn't – right, we could not simply pass to the merits. That's correct. Right. And that's your position. That's the government's position, yes, Your Honor. I'd like to briefly address – I see I'm running close on my time, but I'd like to briefly discuss the Zobel v. Williams case that Mr. Shelley discussed. I think it's very important to note that the appellants read a lot into that case in terms of its relevance to this case. I think it's distinguishable on many different grounds. First of all, as Your Honor noted, it was an equal protection case, not a due process case. But furthermore, I think it's very important to note that that case wasn't strictly a retroactivity case. The Supreme Court noted at page 59 of that opinion that the distinction they complain of is not one which the state makes between those who arrived in Alaska after the enactment of the dividend distribution law and those who were residents prior to its enactment. The distinction that was being challenged there was essentially sort of, in a way, levels of retroactivity. How long you'd lived there. How long you'd lived in Alaska. Exactly. How long you had been a citizen post-statehood. But the real question and the point that Mr. Shelley is making by raising that case, I think, is the language that the court used was directed to what constitutes a rational basis for legislative action. And as to that question, which cuts across equal protection and retroactivity, the court does make a pretty broad statement that the objective in this case, the objective of rewarding past activities, is not a legitimate state purpose. That is pretty sweeping, at least taken in isolation. It is, Your Honor. But there's several points I'd like to make on that. First of all, the test that this court is called upon to apply here today is whether this is rationally related to a legitimate governmental purpose. The holding of the Zobel case was that there was no legitimate governmental purpose to this law. What they held is there's just no legitimate purpose is being served by making these arbitrary distinctions based purely on basically how long you lived somewhere. It wasn't, Your Honor, throughout several hypotheticals regarding veterans and past actions, that there was no actions being rewarded there. It was simply being alive and being in Alaska. And so the holding of the court was there's no legitimate governmental purpose, and that's separate from whether it's rationally related. And I think the importance of this case is we know that there's a legitimate governmental purpose to the CDSOA, and the reason we know that is because this court held that there was a legitimate governmental purpose to the CDSOA in SKF, and that legitimate governmental purpose was to reward domestic producers who had provided assistance to the ITC in its anti-dumping duty investigation. So the question is purely whether it's rationally related. We know that the CDSOA as a whole is rationally related because, again, this court held that it was in SKF. And so the question is just whether this retroactive spur is rationally related. And I see that I'm out of time, so if the court has no further questions. You are. Unfortunately, when you divide up your time, time flies. Thank you, Your Honors. Mr. Gallagher for the commission. And you've got four minutes. Good morning, Your Honor. Patrick Gallagher on behalf of the International Trade Commission. Just to clarify something that you asked about, Judge Bryson, about how it all works. Yes, the mechanics of this distribution. In 2000, the commission was required to take all the existing orders and create a list. That's part of the statute, 60 days. Created the list, provided it to customs. That's called the master list, you call it whatever you want. The customs would use that to then determine when parties applied for disbursements under a particular order for a particular fiscal year. If you're on the list and they publish this, they put this in their initial publication of that first list, that if you have any debate about whether you should be on this list because you're not, then you should go to the commission because the commission makes that determination, not CBP. We argued in FKF that that was the time, the first time that a list is published for an order that the statute of limitations would begin to run. Now that's when you say the list is published for the order. Which list? The list. Not the master list. The list that's provided to customs. The master list. The next fiscal year. Yes, the next fiscal year. Right. They'll publish it in the Federal Register. Here it is. Here's the orders. Here are the parties who are eligible. Here's the criteria for eligibility. Okay, so suppose I'm not on that list, but I think I should be. Then I write the commission. I say, please put me on the list. Yes. And the commission then, what, writes me back or issues another list or whatever? No, issues a determination based on whatever you're claiming. Okay. And then they send me a letter. They send me a letter saying, sorry, you're not eligible. Is it that letter that is the point of accrual of the cause of action? We argued that in SKF. The SKF court said, no, it comes later because, as I understand SKF, because there is no – they can't know whether there are duties available to them until they apply to CBP. So whatever the first fiscal year that they first apply for the duties, CBP is not going to find them on the list. It's going to say, you're not on the list. You're rejected. If you have an issue with that, you should talk to the commission. Right. If we've already issued a decision letter to them, we'll just say you haven't presented any new facts, which goes to the continuation. Then CBP does what it does. It issues another list, right? It will deny the distribution to whoever that party was, and then they move on to the next fiscal year. Okay. And you say SKF identifies that denial as the point at which there is accrual, at least at the earliest. Yes. The time the claim first accrues is the first time that a party requests a disbursement under the statute or under a particular fiscal year and a new order under a particular fiscal year, and that's denied. That's our reading of SKF. We had an earlier date, and the court didn't agree with that. All right. And that goes to Judge Shen's question about continuing claims. SKF posits that every single year we have a new claim, a new claim, a new claim, except their claim they're bringing here is that they should be a petition supporter, not that they were denied in a particular year necessarily. They're saying because you need as a prerequisite to be a petition supporter to qualify. That only happens once for us, for the commission, absent some unusual circumstance. We make that decision once, and they'll be rejected. The first time they'll be rejected will be the first time they ask. There was a final statement to make, Gallagher? I was going to go to incentivize, Your Honor, but I think that was a little bellow. Thank you. Mr. Stewart has three minutes. Your Honor, please accord. I'm Terrence Stewart. I'm here on behalf of Timken and MPB. There were some factual errors in terms of what Mr. Shelley had to say in terms of the timing, which you could tell. The order of 1989, CDSOA, came into existence in 2000. That's an 11-year spread, not a 20-year spread, as was mentioned. On the Zobel case, that case was viewed by the Supreme Court as involving a very important constitutional right, freedom of movement. And hence there was a much higher standard that was applied in terms of looking at whether there was a compelling state interest in putting an infringement on the ability of freedom of movement that was there. So while the languages there are written in the context of the case, in our view, it's not a relevant case for a new process. Because I don't think the SOL issue is critical, but because there is some confusion, let me try my hand at providing you what, in fact, the SKF case does and what, in fact, the June 4 decision is. Mr. Gallagher has reviewed the initial list and when there are letters that are sent to the Commission and rejections, exceptions, et cetera, that happens. And that is all true. The Federal Circuit's decision in SKF goes off of the CBP decision or initial listing. By statute, CBP is required to provide notice to the public that there will be a distribution and CBP puts out information as to amounts that have been collected in the first seven months ahead of putting out that notice. The Federal Circuit, as I read the decision, basically says the time at which all facts are known so that one could file is when a party knows that there will be money to be distributed in the year, not the first year that they apply, but rather is there money in a particular year that's going to be available. And so by the time that notice comes out, that information is there. And that is the basis upon which the court went. That's the date that is in the SKF decision. And that is the date that Customs puts out its notice that there will be distributions. And that occurs, I take it, from what everyone has said, if I'm understanding it correctly, after the point at which a party who has not been included, say, on the master list or otherwise included in the prospective payout has had a chance to make its submission to the Commission or to CBP and say, you've left me out. At that point, that has already been denied? It is viewed by Customs that if they have not gotten an affirmative statement from the Commission, they are not on the list. They do send them a letter of bouncing the certification.  Customs sends a letter of bouncing. If SKF sends a certification where they're not on the list, they will get a letter from Customs at some point saying you're not on the list, you're not eligible. And that at some point will be? That's before distributions occur. Before distributions, but is it after the? It's after that June date. That June date. That's what I'm concerned about. It is after that date, but it is viewed, I believe, by Customs as a pro forma. If you're not on the list and they haven't received word from the Commission that you should be added to the list, then you will be rejected. And you're sending in a certification to kind of preserve your rights to take an appeal. Right. But it's not that there is a new factual data point that's going to come along. Oh, I got rejected. Gee, that's a surprise. When, though, does the complaining party get some kind of response on the merits of that party's request? That's the notice that they get from the Commission when they ask to be added. And that was the argument that, as Mr. Gallagher said, the ITC made before the SKF panel. That was not the date that the court found. But does that occur every year that there's a distribution? That's just way back at the beginning. But in terms of if I want to preserve my right to make a claim in a particular year, who do I go to? Do I go to the Commission or do I go to the CPD? Well, if you have new facts to go to the Commission, I suppose you would go to the Commission. I suppose I hope that the Commission has changed its mind. If it's the same, if there's no change in facts, you would simply file a new certification each year and you would get the same letter that you're on the list. But you would file that with Customs? You would file that with Customs. After Customs had already announced its intent to distribute? Correct, within that 60-day time period. Did that occur in this case? Was there such a request? I believe Mr. Shelley said that SKF, and I believe it was also true for JTAC, filed a submission. At some point in time, Customs modified their notices to say whether you're in fact somebody who qualifies under the statute or whether you simply want to preserve your right to take an appeal, you must file a certification. Thank you, Mr. Stewart. Thank you very much. Mr. Shelley has a little rebuttal time. Thank you, Your Honor. Three minutes. I'd just like to make a couple of points. First, the initial ITC notice, which they made their master list, that was triggered on the language in the CDSOA requiring you to have checked the box. And so at that point, that list is invalid to the extent that, in today's case, it was principally retroactive as a criteria for determining whether you made that list. And until we've gone through all this litigation and have succeeded in one of them, that list can't be changed. But we would argue first, the first criteria is that that list is incorrect and we should have been on that list all along. And in fact, despite not having been on the ITC list each fiscal year, we did file certifications with Customs and received rejections from Customs because we were not on the ITC list. Those rejections, was it more than two years from the date of those rejections that you filed your complaint? I don't remember the dates because if the rejection letters came at the end of the ITC, the Customs notice is published in June. There's 60 days prior in which to file your certifications from the June notice. After that 60-day period, we would file our certifications within that 60-day period. After that 60-day period, which is July, August, at some point we would then in the next month or so receive the letter from Customs denying us from eligibility because we were not on the ITC list. That gets us right into September, which is just about exactly two years. And our argument is that first, regarding the DECTA issue in SKF on this, there was no issue of statute of limitations in that case because those cases were filed well within any of the two-year periods that were up for debate except possibly the ITC's position. So we did that. But despite when we get the letter of rejection from Customs and despite the fact that Customs has published a temporary or preliminary list of funds that have been gathered for that, until they send distributions to all the affected domestic producers at the end of the fiscal year, which in this case was filed within that two-year period, there is no certainty that there's going to be any impact or adverse impact on SKF. And there is no adverse impact until Timken or the other companies get the money from Customs service. So the fact that there may be distributions and that that is known possibly earlier, there's no final decision on that until the money goes out. And our position is that that is when the two-year statute of limitations begins. And we believe that the SKF decision allows that because there was not a decision in that case. There was no need for a decision on when the statute of limitations began to run. There was only a decision that we were within that time frame and there was a dicta that said perhaps it begins when the notice comes out, but there was no decision for that and there's no decision of CIT on that issue. Just one very quick last question. Is there anywhere in the record that we would be able to find the date of that letter from CBP telling you that your certification was not being accepted? The letter that came in response to your submission of a certification within 60 days of the June date. It might have been. We might have put it in the original SKF Joint Appendix. I could check that. I don't believe it's in this case. It's not in the record of this case? Not in the record of this case as far as I know. I'll double check it. I don't think we need to do it because the timing was given. Your theory and the defendant's theory of statute of limitations are quite different, but it may be that we end up thinking that something in the middle and that it may matter as to when that letter was sent and how it was sent. There is also the continuing argument. Thank you, Mr. Shelley. The case is submitted.